IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:17-CV-141

| | | |
|---|---|---|
| IN RE: | ) | |
| OUTER BANKS POWER OUTAGE | ) | **ORDER** |
| LITIGATION, | ) | |

On November 10, 2017, plaintiffs, on behalf of themselves and other similarly situated, filed a complaint against PCL Civil Constructors, Inc. and PCL Construction Enterprises, Inc. (collectively "PCL") for negligence, negligence per se, gross negligence, private nuisance, private claim for public nuisance, and breach of contract [D.E. 3]. On March 9, 2018, plaintiffs moved for preliminary approval of a class action settlement [D.E.11] and filed a memorandum in support [D.E. 12]. On May 2, 2018, the court held a hearing. As discussed below, the court grants plaintiffs' unopposed motion for preliminary approval of a class action settlement.

I.

A.

On July 26, 2011, the North Carolina Department of Transportation ("NCDOT") awarded PCL a design-build contract for a new bridge to replace the Hebert C. Bonner Bridge. The Hebert C. Bonner Bridge spans the Oregon Inlet and is the single point of road access from the North Carolina mainland via Bodie Island to the Outer Banks islands. See Compl. [D.E. 3] ¶¶ 1–2, 5. The NCDOT originally agreed to pay PCL $215.8 million but the NCDOT later increased that amount to $246 million. See id. ¶ 5. The NCDOT granted the contract to PCL, in part, because PCL promised to perform the work on an accelerated schedule and to use its expertise to avoid harm to environmentally sensitive areas. See id. PCL's contract provided that it owed a duty to prevent

foreseeable harm that could occur if PCL damaged the power cables that supply the islands with electricity. See id. ¶¶ 7, 85. The contract also required PCL to "use suitable precautions to prevent damage to pipes, conduits, and other underground structures, and to poles, wires, cables, and other overhead structures." Id. ¶ 86.

On July 27, 2017, while PCL was working on the bridge project, PCL severed power cables near the south end of the bridge which cut the islands' power at the height of the tourist season. See id. ¶¶ 9–10. On the same day, Governor Roy Cooper declared a state of emergency and governmental agencies issued mandatory evacuations. See id. ¶¶ 132–33. The loss of power and evacuations caused class members economic losses. See id. ¶ 140.

On July 31, 2017, plaintiffs filed the first of six class action lawsuits against PCL. See Daniel K. Bryson Decl. [D.E. 13] ¶ 10. Plaintiffs' counsel from the numerous actions conferred and decided that consolidation would promote judicial efficiency. See id. ¶ 11. On October 12, 2017, the court consolidated all six class actions, appointed interim co-lead counsel and an interim steering committee, and ordered plaintiffs' counsel to file a consolidated complaint [D.E. 1]. On November 10, 2017, plaintiffs filed a consolidated complaint [D.E. 3]. Plaintiffs' now seek preliminary approval of a class action settlement [D.E. 11].

### B.

The proposed settlement includes three settlement classes: (1) the business class; (2) the rental/vacationer class; and (3) the resident class. Proposed Settlement Agreement [D.E. 13-1] 4. The business class is defined as "[a]ll businesses located and/or operating on Hatteras and Ocracoke Islands during the time of the Incident. This class does not include persons or entities renting homes to vacationers." Id. The rental/vacationer class is defined as "[a]ll persons who rented a vacation property on Hatteras or Ocracoke Islands during the time of the Incident (the "Vacationers"),

together with all persons or entities that rented homes to Vacationers." Id. The resident class is defined as "[a]ll permanent residents of Hatteras and Ocracoke Islands at the time of the Incident." Id. Numerous individuals and entities are excluded from the settlement classes including:

> (1) persons who are Defendants' employees, agents, directors, officers, insurers, contractors, subcontractors, including employees of Defendants' agents, contractors, and subcontracts; (2) persons who timely and properly exclude themselves from the Settlement Classes as provided in this Agreement; (3) any federal, state, or local governmental entity that would otherwise be a member of a Settlement Class; (4) anyone or any entity that has previously executed a release of all claims against Defendants related to the Incident and would otherwise be a member of a Settlement Class; (5) the Court, the Court's immediate family, and Court staff; (6) the attorneys for any of the Parties and members of their law firms; (7) any person or entity whose losses were paid, in whole or in part, by Arch Insurance Company; (8) the State of North Carolina's claim for lost tax revenue; (9) Dare County and its claim for lost tax revenue; (10) Hyde County and its claim for lost tax revenue; (11) any utility company servicing Hyde and Dare Counties that is asserting a claim for lost revenue; and (12) Real Water Sports and Ocracoke Variety for the claims that have already been made against Defendants.

Id. at 4–5.

The settlement establishes a claims program whereby the settlement classes will receive cash payments. PCL will pay into the settlement fund $10,350,000 (less any attorneys' fees, costs, and incentive awards) of which $100,000 will be used to pay for the costs of notice and administration. See id. at 8. Any additional costs for notice and administration also will be paid from the settlement fund. Class counsel will request an award of attorneys' fees not to exceed $3,415,500 (33% of the settlement fund), as well as costs not to exceed $100,000. See id. at 10. Class counsel also will request a service award payment of $2,500 for each of the class representatives. See id. The aggregate service award payments will not exceed $72,500. See id.

Payments into the settlement fund will be allocated as follows: (1) $8,100,000 of the settlement fund will be allocated to the business class, and (2) $2,250,000 of the settlement fund will be allocated to the rental/vacationer class and the resident class. See id. at 26–27. Business class

3

members that submit a timely business claim form may either: (1) receive a $2,500 payment upon proof of a valid Business Tax Identification Number at the time of the outage and a sufficient written statement of the economic loss incurred; or (2) may submit documentation of proof of loss and seek a recovery in excess of $2,500. Recovery in excess of $2,500, however, is not guaranteed. See id. at 26–27. Rental/vacationer class members and resident class members who submit a timely claim form can recover their economic damages. See id. at 28, 47–52. Any funds remaining after all claims are processed and all other attorneys' fees, expenses, and costs are paid will be first distributed to business class, rental/vacationer class, and resident class members pro rata in an amount equal to 20% of their recovery. See id. at 28. Any remaining funds will be paid to cy pres recipients approved by the court. See id.

II.

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The primary concern of Rule 23(e) is "the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." In re Jiffy Lube Secs. Litig., 927 F.2d 155, 158 (4th Cir. 1991). Courts generally follow a two-step procedure in reviewing the proposed settlement. See Beaulieu v. EQ Indus. Servs., Inc., No. 5:06–CV–00400–BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009) (unpublished); Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 855 F. Supp. 825, 827 (E.D.N.C. 1994). First, the court preliminarily reviews the settlement to determine whether there is "probable cause to notify the class of the proposed settlement." Horton, 855 F. Supp. at 827 (quotation omitted); see Armstrong v. Bd. Sch. Dir. of Milwaukee, 616 F.2d 305, 314 (7th Cir. 1980), overruled on other grounds by Felzen v. Andreas, 134 F.3d 873 (7th Cir. 1998). Second, after notice has been sent to

4

putative class members, the court conducts a final fairness hearing at which "all interested parties are afforded an opportunity to be heard on the proposed settlement." Horton, 855 F. Supp. at 827.

Preliminary approval of a class action settlement "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." Menkes v. Stolt-Nielsen S.A., 270 F.R.D. 80, 101 (D. Conn. 2010); see In re Titanium Dioxide Antitrust Litig., No. RDB–10–0318, 2013 WL 5182093, at *3 (D. Md. Sept. 13, 2013) (unpublished); Horton, 855 F. Supp. at 827. In other words, the purpose of the preliminary approval is for the court to determine that the proposed settlement agreement is "sufficiently within the range of reasonableness." In re Titanium Dioxide Antitrust Litig., 2013 WL 5182093, at *3; see Richardson v. L'Oreal USA, Inc., 951 F. Supp. 2d 104, 106–07 (D.D.C. 2013); Smith v. Wm. Wrigley Jr. Co., No. 09–60646–CIV, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010) (unpublished); 4 William B. Rubenstein, Newberg on Class Actions § 13:10 (5th ed. 2017).

The settlement agreement "is within the range of possible final settlement approval, such that notice to the class is appropriate." DeLeon v. Wells Fargo Bank N.A., No. 12 Civ. 4494(RA), 2015 WL 821751, at *2 (S.D.N.Y. Jan. 12, 2015) (unpublished); see In re Vitamins Antitrust Litig., Nos. MISC. 99–197(TFH), MDL 1285, 2001 WL 856292, at *4–5 (D.D.C. July 25, 2001) (unpublished). Plaintiffs consolidated their claims and worked together to file the strongest complaint against PCL. See Bryson Decl. ¶¶ 11–14. The settlement agreement is the result of extensive, arms-length negotiations which included a three-day mediation with a highly experienced mediator. See id. ¶¶ 18–22. The parties also engaged in confirmatory discovery to allow plaintiffs to understand the scope of damages. See id. ¶ 18. Moreover, plaintiffs engaged an expert to assess the economic impact of the bridge incident and the expert opined that class members who submit claims will likely be able to recover 100% of their remaining economic losses. See id. ¶ 27; Mark Ewen Decl. [D.E.

13-5] ¶ 44. Accordingly, the court finds that there is probable cause to direct notice to putative class members. See, e.g., Dewhurst v. Century Aluminum Co., No. 2:09-1546, 2017 WL 2374393, at *3 (S.D. W. Va. May 31, 2017) (unpublished); Bicking v. Mitchell Rubenstein & Assocs., P.C., No. 3:11CV78-HEH, 2011 WL 5325674, at *5 (E.D. Va. Nov. 3, 2011) (unpublished)

III.

The court preliminarily considers whether the proposed settlement classes meet the requirements of Fed. R. Civ. P. 23(a) and (b)(3). See, e.g., Wm. Wrigley Jr. Co., 2010 WL 2401149, at *3–6; Smith v. Prof'l Billing & Mgmt. Servs. Inc., No. 06-4453 (JEI), 2007 WL 4191749, at *3 (D.N.J. Nov. 21, 2007) (unpublished). The requirements for certification of a settlement class parallel the requirements for certification of a litigation class. See Berry v. Schulman, 807 F.3d 600, 608 (4th Cir. 2015); Decohen v. Abbasi, LLC, 299 F.R.D. 469, 476 (D. Md. 2014). In order to be certified, the putative class must meet the four Rule 23(a) prerequisites and fit within one of the three Rule 23(b) categories. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620–21 (1997); Berry, 807 F.3d at 608. The parties seek certification under Rule 23(b)(3).

A.

Under Federal Rule of Civil Procedure 23(a), class certification is appropriate if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

As for numerosity, "[t]here is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied." Kelley v. Norfolk & W. Ry., 584 F.2d 34, 35 (4th Cir. 1978) (per curiam). "The issue is one primarily for the District Court, to be resolved in light of

6

the facts and circumstances of the particular case." Id.; see Holsey v. Armour & Co., 743 F.2d 199, 217 (4th Cir. 1984). Here, the proposed settlement class consists of approximately 300 businesses, 475-1,500 vacation rental properties, and 1,000 residential properties. Accordingly, the settlement class meets Rule 23(a)'s numerosity requirement. See, e.g., Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 425–27 (4th Cir. 2003); Velasquez-Monterrosa v. Mi Casita Rests., No. 5:14-CV-448-BO, 2016 WL 1703351, at *4–5 (E.D.N.C. Apr. 26, 2016) (unpublished).

As for the second and third Rule 23(a) factors, "the requirements for typicality and commonality often merge." Romero v. Mountaire Farms, Inc., 796 F. Supp. 2d 700, 714 (E.D.N.C. 2011); see Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n.13 (1982); Kidwell v. Transp. Commc'ns Int'l Union, 946 F.2d 283, 305 (4th Cir. 1991). Under the "commonality" requirement of Rule 23(a)(2), at least one common question of law or fact must exist among class members. See EQT Prod. Co. v. Adair, 764 F.3d 347, 360 (4th Cir. 2014); Brown v. Nucor Corp., 576 F.3d 149, 153 (4th Cir. 2009); Haywood v. Barnes, 109 F.R.D. 568, 577 (E.D.N.C. 1986). The typicality requirement is met if, "the claims of the representative parties [are] typical of the claims of the class." Haywood, 109 F.R.D. at 578; see Soutter v. Equifax Info. Servs., LLC, 498 F. App'x 260, 264–65 (4th Cir. 2012) (unpublished); Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006). A claim is typical if it "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." Beattie v. CenturyTel, Inc., 511 F.3d 554, 561 (6th Cir. 2007); see Romero, 796 F. Supp. 2d at 714. The typicality requirement is "captured by the notion that as goes the claim of the named plaintiff, so go the claims of the class." Deiter, 436 F.3d at 466 (quotation omitted); see Soutter, 498 F. App'x at 264–65; Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998). Here, the plaintiffs and class members share common questions of law and fact, including, among

7

others: (1) whether PCL's employees or agents acting within the scope of their duties damaged the power lines; (2) whether PCL breached a duty of care owed to the plaintiffs and class members; and (3) whether PCL engaged in willful, wanton, and reckless conduct.

As for the fourth requirement, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Amchem, 521 U.S. at 625–26 (alteration and quotation omitted); see In re Red Hat, Inc. Secs. Litig., 261 F.R.D. 83, 87 (E.D.N.C. 2009). The adequacy inquiry also "serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem, 521 U.S. at 625; see Beattie, 511 F.3d at 562. A conflict must be considered "fundamental" to defeat the adequacy requirement. See Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 184 (3d Cir. 2012); Ward v. Dixie Nat'l Life Ins. Co., 595 F.3d 164, 180 (4th Cir. 2010); Gunnells, 348 F.3d at 430–31. "A conflict is not fundamental when . . . class members share common objectives and the same factual and legal positions and have the same interest in establishing the liability of defendants." Ward, 595 F.3d at 180 (quotation and alteration omitted); see Gunnells, 348 F.3d at 430–31. Moreover, in assessing the representative's adequacy, courts may consider several factors including "honesty, conscientiousness, and other affirmative personal qualities." Shiring v. Tier Techs., 244 F.R.D. 307, 315 (E.D. Va. 2007); see In re Red Hat, Inc. Secs. Litig., 261 F.R.D. at 87.

The court preliminarily finds Matthew Breveleri, Robert Case, Rhonda Derring, Nina Edgar, Thomas Edgar, Edwin Fitzpatrick, Karen Fitzpatrick, Alex Garrish, Tami Gray d/b/a Family Water Adventures, Marissa Gross d/b/a Down Creek Gallery, Stephen Harris, Hatteras Blue, Inc., Charles Hofmann, Michael Janssen, Las Olas, Inc., Jack Levis, Briggs McEwan, Bryan Meekins d/b/a TBM Construction, Miss Ocracoke, Inc., Daniel Spaventa, Michael Stockwell d/b/a Morning Star Stables, Kathleen Triolo d/b/a Island Vibe Café, Tri-V Conery, Inc., Edward Waas, Mike Warren, William

8

Bailey, Kerry Fitzgerald, Stephen Wilson, and Stephen Wright are adequate representatives of the settlement classes for settlement purposes only. Class representatives are "all pursuing damages under the same statutes and the same theories of liability, and the differences among them will not ... pit one group's interests against another." In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., 795 F.3d 380, 394 (3d Cir. 2015). Moreover, class representatives have "pursue[d] a resolution of the controversy in the interests of the class." Dura-Bilt Corp. v. Chase Manhattan Corp., 89 F.R.D. 87, 101 (S.D.N.Y. 1981); see Berry, 807 F.3d at 613–14. Accordingly, the court preliminarily finds that the proposed settlement classes, for the purposes of settlement only, meet the requirements of Fed. R. Civ. P. 23(a). See, e.g., Munday v. Navy Fed. Credit Union, No. SACV 15-1629-JLS (KESx), 2016 WL 7655807, at *6 (C.D. Cal. Sept. 15, 2016) (unpublished); DeLeon, 2015 WL 821751, at *2–3; Singleton v. Domino's Pizza, LLC, No. DKC 11-1823, 2013 WL 12246357, at *3 (D. Md. May 13, 2013) (unpublished).

B.

Rule 23(b)(3) allows a class action to be maintained if the court finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In other words, Rule 23(b)(3) has two requirements: predominance and superiority. See Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 319 (4th Cir. 2006).

As for predominance, the predominance requirement is "far more demanding than Rule 23(a)'s commonality requirement and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Gariety v. Grant Thornton, LLP, 368 F.3d 356, 362 (4th Cir. 2004) (quotation omitted); see Amchem, 521 U.S. at 623–24; Gray v. Hearst Commc'ns, 444

9

F. App'x 698, 700–01 (4th Cir. 2011) (unpublished); Thorn, 445 F.3d at 319. The predominance inquiry focuses on the balance between individual and common issues. See Brown v. Nucor Corp., 785 F.3d 895, 917–21 (4th Cir. 2015); Myers v. Hertz Corp., 624 F.3d 537, 549 (2d Cir. 2010). Common issues of law and fact have been held to predominate "where the same evidence would resolve the question of liability for all class members." Beaulieu, 2009 WL 2208131, at *20; see Stillmock v. Weis Mkts., 385 F. App'x 267, 273 (4th Cir. 2010) (unpublished); Gunnells, 248 F.3d at 428; Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 40 (1st Cir. 2003).

Plaintiffs and class members' claims are based on common legal theories concerning PCL's alleged negligence and reckless misconduct. Moreover, the same evidence can be used to establish PCL's liability and class members' entitlement to relief. Thus, the predominance inquiry is satisfied.

As for the superiority requirement, plaintiffs must be able to demonstrate that proceeding as a class "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); see Thorn, 445 F.3d at 319. In assessing superiority, courts should consider the following factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); see Thorn, 445 F.3d at 319. Courts should consider "whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." Stillmock, 385 F. App'x at 274 (quotation omitted). However, on a request for a settlement-only class certification, the court need not consider the likely difficulties in managing a class action. See Amchem, 521 U.S. at 620; Carter v. Forjas Taurus, S.A., 701 F. App'x

10

759, 765 (11th Cir. 2017) (per curiam) (unpublished); Decohen, 299 F.R.D. at 476.

The superiority requirement is met. As for the first factor, the burden and expense of individual litigation, and the legal and practical difficulty of proving individual claims concerning these events, make it highly unlikely that individual class members could obtain the relief achieved in this settlement if they were forced to proceed on their own. As for the second factor, no individual claims are pending. As for the third factor, this court presents a desirable forum for litigating these claims. The claims arose in the Eastern District of North Carolina, many of the relevant records are in the Eastern District of North Carolina, and many of the class members reside in the Eastern District of North Carolina. Accordingly, the court preliminarily finds that the requirements of Rule 23(b)(3) are met. See, e.g., Munday, 2016 WL 7655807, at *6; DeLeon, 2015 WL 821751, at *2–3; Singleton, 2013 WL 12246357, at *3.

IV.

The parties seek approval of the proposed notice plan designed by Angeion Group. As for the proposed notice plan, Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). When a class is certified at the same time as settlement, the notice must also comport with the requirements of Rule 23(c)(2)(B). See, e.g., Fidel v. Farley, 534 F.3d 508, 513 (6th Cir. 2008). Rule 23(c)(2)(B) requires that all class members be provided with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); see Low v. Trump Univ., LLC, 881 F.3d 1111, 1115 (9th Cir. 2018). The notice must include the following information, written in plain language: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that

the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B); see Decohen, 299 F.R.D. at 478 n.17. Under Rule 23(c)(2)(B), "[t]he yardstick against which we measure the sufficiency of notices in class action proceedings is one of reasonableness." Low, 2018 WL 718916, at *5 (quotation omitted); see In re Bank of Am. Corp. Sec. Derivative, & ERISA Litig., 772 F.3d 125, 132 (2d Cir. 2014).

Rule 23(e)(1) does not specify "the required contents of the settlement notice." McLaurin v. Prestage Foods, Inc., No. 7:09-CV-100-BR, 2011 WL 13146422, at *5 (E.D.N.C. Nov. 9, 2011) (unpublished) (quotation omitted). Due process, however, requires that notice be "the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985) (quotation omitted). The notice should describe, in neutral terms, the action, the terms of the proposed settlement, and class members' rights, including the right to opt-out. See id.; Grunin v. Int'l House of Pancakes, 513 F.2d 114, 122 (8th Cir. 1975); McLaurin, 2011 WL 13146422, at *5. Neither Rule 23 nor the Due Process Clause require the notice "set forth every ground on which class members might object to the settlement." Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Co., 497 F.3d 615, 630 (6th Cir. 2007); see Grunin, 513 F.2d at 122. "All that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." Int'l Union, 497 F.3d at 630 (quotation omitted).

The court has reviewed the proposed notice plan and finds that the notice plan provides the best practicable notice under the circumstances and, when completed, shall constitute fair,

reasonable, and adequate notice of the settlement to all persons and entities affected by or entitled to participate in the settlement, in full compliance with the notice requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process. Thus, the court approves the proposed notice plan. Moreover, the court approves appointment of Crawford & Company as the settlement administrator and Angeion Group as the notice provider.

V.

The court adopts the following settlement procedure and schedule:

1. The court hereby orders the notice provider to implement the notice events identified in the settlement agreement and notice plan, using the forms attached as exhibits to the settlement agreement, pursuant to the following schedule:

Notice Period to Begin: May 14, 2018.

Notice Period to End: July 3, 2018.

Post-Notice Declaration of Notice Provider Attesting to its Compliance with the Notice Plan Filed with the Court: September 4, 2018.

**Objections to Settlement**

2. Any member of the settlement classes who objects to the settlement agreement shall file a written objection with the court, with a written copy served on class counsel and defendants' counsel by July 31, 2018.

3. The written objection must comply with the following requirements:

a. Objections must include: (i) the objector's name, address, and telephone number; (ii) the name of this action and the case number; (iii) a statement of each objection; and (iv) a written brief detailing the specific basis for each objection, including any legal and factual support the objector wishes to bring to the court's attention and any evidence the objector wishes to introduce in support

of the objection.

      b. If the objection is made through an attorney, the written objection also must include: (1) the identity and number of the settlement class members represented by objector's counsel; (2) the number of such represented settlement class members who have opted out of any settlement class; and (3) the number of such represented settlement class members who have remained in the settlement class and have not objected. The objector must include with the objection a signed and sworn statement verifying under penalty of perjury that the objector is a member of the settlement class and provide all information required by the claim form.

      c. If the attorney intends to seek fees and expenses from anyone other than the objectors he or she represents, the attorney shall also file with the court and serve upon class counsel and defense counsel not later than 15 days before the final approval hearing or as the court may otherwise direct a document containing the following: (1) a description of the attorney's legal background and experience in connection with class action litigation, including the cases in which the attorney has represented an objector to a class action settlement; (2) the amount of fees sought by the attorney for representing the objector and the factual and legal justification for the fees being sought; (3) a statement outlining the specific method of fee calculation; (4) the number of hours already spent by the attorney and an estimate of the hours to be spent in the future; and (5) the attorney's hourly rate.

      d. Objectors also must make themselves available for deposition by counsel for the parties between the time the objection is filed and a date no later than five days before the final approval hearing, and the objection must include the dates when the objector is available for deposition.

      e. Class members or their attorneys intending to make an appearance at the final approval hearing must deliver to class counsel and defense counsel and have file-marked by the court, no later than ten days before the final approval hearing or as the court otherwise may direct, a notice of

intention to appear.

   f. Any settlement class member who fails to timely file such a written statement of his or her intention to object shall be foreclosed from making any objection to the settlement and shall waive and forfeit any and all rights he or she may have to appear separately and/or object.

   4. Counsel for the parties shall file any responses to the objections submitted by objecting settlement class members at least eight days before the date of the final approval hearing.

**Exclusions from Settlement**

   5. Any settlement class member who wishes to be excluded from the settlement classes shall mail written a request for exclusion to the settlement administrator by July 31, 2018

   6. Any potential settlement class member that effectively excludes himself or herself from the settlement shall not participate in or be bound by the settlement.

**Filing and Administration of Claim Forms**

   7. To participate in the settlement, a settlement class member must complete, sign under penalty of perjury, and mail, a claim form, attached as Exhibit A to the settlement agreement. The claim form and any other required documentation must both be mailed via first class mail to the settlement administrator and postmarked on or before the last day of the claims period, or submitted electronically through the settlement website on or before the last day of the claims period. The last day of the claims period is October 15, 2018.

   8. The settlement administrator shall process each claim, confirm whether each claimant satisfies the eligibility requirements set forth in the settlement agreement, and determine the amount, if any, of each valid claim as provided for in the settlement agreement. The settlement administrator shall review all claim forms for the adequacy of the submittal, inclusive of the required supporting forms, submissions, and claimant affirmation.

9. Where the settlement administrator believes there are insufficiencies in any part of a submittal, it shall follow the process for handling insufficiencies outlined in the settlement agreement.

10. Ten days after the notice provider commences the notice period (and every week thereafter), the settlement administrator shall provide class counsel and defendants' counsel a report listing: (1) any putative claims denied as fraudulent or otherwise ineligible; and (2) any claims determined to be valid.

**Final Approval Hearing**

11. A hearing on final settlement approval (the "Final Approval Hearing") will be held on September 14, 2018, in courtroom one of the Terry Sanford Federal Building, 310 New Bern Avenue, Raleigh, North Carolina, at 2:00 p.m., to consider matters relating to the settlement, including the following: (a) whether the settlement classes should be certified, for settlement purposes only; (b) the fairness, reasonableness and adequacy of the settlement, the terms of the settlement agreement, the dismissal with prejudice of the litigation as to defendants, and the entry of final judgment; and (c) whether class counsel's application for attorneys' fees, expenses, and service awards for the settlement class representatives, and their other costs should be granted.

12. The court orders class counsel to file with the court any memoranda or other materials in support of final approval of the settlement and any fee petition by August 27, 2018. Any response is due by September 4, 2018. Any reply is due by September 10, 2018.

13. Any settlement class member may retain an attorney at his or her own expense to appear in the action. Such attorney shall file with the court and serve a notice of appearance on class counsel and defendants' counsel by September 4, 2018.

**Service of Objections, Notices of Intent to Appear, and Other Documents**

14. When this order directs that papers, briefs, objections, notices and other documents be served upon class Counsel and defendants' counsel, service shall be made to the attorneys listed below by United States Mail, first class, addressed as follows:

Class Counsel

>Daniel K. Bryson
>Mona Lisa Wallace
>Robert Zaytoun
>c/o Whitfield Bryson &
>Mason LLP
>900 W. Morgan St.
>Raleigh, NC 27603

Counsel for Defendants PCL Civil Constructors, Inc. and PCL Construction Enterprises, Inc.
>Rodney E. Pettey
>David M. Fothergill
>Alexandra L. Couch
>Yates, McLamb & Weyher, LLP
>434 Fayetteville St.
>Suite 2200
>Raleigh, NC 27601

VI.

In sum, the court GRANTS plaintiffs' motion for preliminary approval of class action settlement [D.E. 11], and GRANTS plaintiffs' motion to seal [D.E. 15, 17]. The court sets the final fairness hear for September 14, 2018, at 2:00 p.m in courtroom one of the Terry Sanford Federal Building, 310 New Bern Avenue, Raleigh, North Carolina.

SO ORDERED. This _2_ day of May 2018.

>JAMES C. DEVER III
>Chief United States District Judge